All right, each side has 15 minutes. Good morning. Good morning, your honors, and may it please the court. My name is Miguel Martinez on behalf of the petitioners Laura Patricia Sanchez Cacho and her two children. This court should grant this petition for review. In this case, the petitioner was subject to acts persecution since she was a young woman. The agency agreed in that the petitioner suffered harm that amounted to persecution. However, the agency erred in finding that it was not on account of a protected ground. Our position is that the respondent, the petitioner in this case, was persecuted on account of her gender primarily and on account of her membership in the witness-based groups that we set forth in our brief. Well, so you contend several social groups here, correct? How many total? I believe eight total. That's pretty significant. I mean, usually. So to me, your closest one might be the witness. But after a review of the case law on social distinctness, including Enriquez-Rivas, it appears that a petitioner's specific evidence of distinctness is very important. So could you explain how petitioner's article on witness protection, as well as her article related to the bloggers, supports her proposed, quote, criminal witness, unquote, social groups? Well, Your Honors, this court has found that the society at large needs to recognize the group. And in Enriquez-Rivas, it did so also based on a local law in El Salvador, which protected witnesses. In this case, Mexico has a similar law. Also, there is the article about individuals who share information about the cartels. Well, there isn't a specific case that recognizes what your client's asking us to recognize, correct? May you repeat the question, Your Honor? Well, is there a specific case out there that recognizes, quote, criminal witness social groups? Criminal witness social groups? Well, that's what you're asking us to recognize as one of her social groups, right? Yes, but there are several groups. And, but may I shift the focus primarily to the gender-based part of our argument? Well, you can talk about that later, but now you have to talk about what I want to talk about. Okay. There hasn't been a case, Enriquez-Rivas treated that issue. And he talked about the fact that that specific applicant for asylum was a witness, a testimonial witness in the case. But Enriquez-Rivas does not impose a categorical rule on being a testimonial witness in order to benefit from a witness type of particular social group. Okay. So you propose like eight groups, but you have, but three of the social groups are related to criminal witnesses alone. As we sort through them, which of these criminal witness groups do you believe is the best fit or provides the strongest position for your client? The one that, in my view, Your Honor, the one that best fits the circumstances, Mexican witnesses to serious cartel crimes who do not report crimes to law enforcement, whose identities are known to the cartel. But so the, as I understand the agency's findings, the immigration judge considered respondent did not testify against the cartel or provide the police with a statement. So as you say, it is the definition of simply people who have not, not simply, but people who are threatened because they are, have been witness to cartel crime and are known to the cartel. But the evidence in the record that the agency was given to deal with was, were two articles in part. There may be more, but one dealt with the witness protection program. And I think as we've explored, it's undisputed that this petitioner was not a member of the witness protection program. And then the second, or the bloggers, the violence against people who were perceived to have reported the crimes. So not in, haven't reported to the police and haven't reported publicly. So how do either of those compel us to find that that is a particular social group, or am I missing some other piece of evidence that be doing the work of compelling us to find differently than the agency? There's an additional piece of evidence and that's contained in the petitioner's declaration before the agency, which was given full evidentiary weight as well, where she recounts an incident where she encountered two corpses with signs stabbed to their chest saying that this is what happens when you talk about us or something along those lines. Again, is she, is the position here that she's talked about the cartel to anyone? The position is the perception, not that she actually talked to the police or not that she actually talked to law enforcement. It's the fact that she witnessed the murder. But are any of the examples that you've provided so far, persecution of people on the basis of a perception? So far, all of these examples are, seem to be people who have actually reported the crime. And I think that the difference between the group that you're proposing and the difference that we've recognized elsewhere, and that the record has, is that there's been a report. And so none of those involve the perception piece. How does, where in the record compels us to find that extra piece, which I think is important to your claim? Because the cartel saw the prosecutors going to her house and they confronted her about it. And that created the perception that she had some type of ongoing communication with the... So it was as good as she reported. Okay. Could we talk about the blogger article for a moment? In that article, do we know whether the individuals who were killed were actually the ones who had done the blog post or reported to the blog? According to the article, my understanding is that it was. But again, it's the societal perception as far as someone who has information that is incriminating and can be a witness. And it's also the exposure that Henriquez Rivas, kind of like it's established, that puts her in danger because the cartels, she's exposed to the cartels. Now that they are aware, they saw the prosecutors at her house. And that the government might frame this as an extortion case, but the timing in this case is essential because the record establishes that she had a food business that she was running for years and years and years, five, six, seven years in a cartel infested area. However, the cartel came knocking at her door after she witnessed the murder. So the government's position that this is a money case, in my view, obviously is undermined by that major fact in the case of timing. When did the cartel come to her house? Was it about the money? And another very illustrative fact in the record is the first encounter, the first contacts with the cartel, once they came knocking at her door, it wasn't about the money. It wasn't about, give me $5,000 to keep running your food stand. It was, we saw you witness the murder and we saw the prosecutors at your house. So I thought in the blogger article that the issue there was that it wasn't known whether the folks who were killed had actually done the reports. Do I have that wrong? I will have to go, but I don't have it off the top of my head, Your Honor. And my apologies for that, but it again- I think a detective testified on that, that it would be impossible to find out whether the victims actually posted anything online about the cartels. So maybe the article establishes that the society knows about victims is that they were suspected of reporting serious gangs. It's all about the perception. The perception, you are correct, Your Honor. That's where we're trying to- So I'm going to ask your friend on the other side about that, is whether if that stands for the proposition that doesn't, does the blogger situation mirror petitioner's social group where she's saying, quote, Mexican witnesses who are suspected of reporting serious gang crimes to law enforcement. That can be encapsulated also with witnesses, right? It's, in my view, it's all about the perception. If you're a blogger or if you are suspected to have shared some type of content related to the cartels, even if- Well, why aren't those different? I mean, I guess there's no dispute that the victims discussed in the snitches article were bloggers. The question is whether they had posted anything about it, whether they knew. But of course, if your job is to spread information, which is not the petitioner's here, is that a material difference? Sharing information can be in different forms, right? Sharing information can be revealing, incriminating facts to the community at large via social media blog, or it can be revealing, incriminating information to law enforcement, right? It's more about the medium than anything else. But the important thing here about the Enriquez-Rivas holding is the exposure, right? Enriquez-Rivas did not impose a categorical rule about having to testify in open court in order to be able to claim legally a witness-based group. And the exposure was present in this case when she was confronted by the cartels. The next point I wanted to make was going back to the petitioner's- Sorry, I work in immigration court, so I have the respondent stuck in my head. The petitioner's childhood. There are several accounts. There's actually three full pages in her declaration dedicated to the trauma she suffered in her early years, specifically at the hands of her father. In this type of trauma, the agency found that it amounts to the level of persecution. However, the agency stopped in their analysis when they said, well, this is not on account of a protected ground, but we disagree. It was, and the record is very clear on that. She grew up, the petitioner grew up in a household where it was okay. It was tolerated to abuse women. Her mother, there's accounts in the record about her mother being beaten to the point of unconsciousness in that household. There's accounts in the record of the petitioner's brother beating his mother and assaulting her with a knife because the brother suspected that the mom was being unfaithful to the father. There are accounts in the record of the petitioner's sister being raped in that same community. But the more precise point I want to make is that the petitioner was sexually, that her father tried to sexually assault her, and she states in her psychological evaluation that she felt as if her father didn't look at her as a daughter, but looked at her as a woman. And that is supported by other facts in the record. For example, the fact that the father tried to make sexual advances towards her. And the broader point I want to make is, you might be asking, well, counsel, how does that serve the case, right? What do we do? What do we do? Well, if the court agrees with our position, that would constitute past persecution on account of gender, specifically Mexican women. And that will open up the door for the petitioner to seek humanitarian asylum for the agency, which is a form of relief that was denied. Not denied, but the immigration judge did not get to that part because past persecution was not established on account of a protected ground. And my time is running out, so I reserve the balance. I don't think we have any additional questions, so I'll give you two minutes for a rebuttal. Thank you. Good morning. Morning, Your Honors. May it please the court. My name is Kosei Ugamori, and I represent the United States Attorney General in this case. The court should deny this petition for review. This case is about extortion. It's not about persecution on account of a cognizable protected ground. It's not about torture. The petitioner raises a litany of claims, but she cannot change the baseline facts of this case, which is that she was the unfortunate victim of an extortion, and extortion by itself is not a basis for asylum, withholding, or cap protection. And to the extent the petitioner alleges abuse as a child, the evidence does not compel the conclusion that she suffered past persecution on account of a protected ground, and she has never raised a separate claim of future persecution based on the abuse. So in terms of the proposed criminal witness group, or criminal witness social groups, I think it's true that the articles are not a perfect match with this case, but if you take them at a high enough level of generality, they do seem to suggest that Mexican society recognizes people who are identified as cooperating with law enforcement, whether or not they actually testify in court. So why wasn't that overlooked, improperly overlooked below? I do not think any evidence was overlooked, and that's not the petitioner's claim. But yes, at some level of generality— Disregarded, I should say. Go ahead. Well, the question before this court is whether there is evidence that compels the conclusion that Mexican society views these three or one of the alleged witness-based social groups as distinct in their society. So that's the question. First and foremost, review is not de novo. Review is for substantial evidence. It seems like that she alleges, admittedly, one of the largest number of social groups that I've been doing immigration cases for a long time. I mean, she's through every social group against the kitchen sink and what stinks, see what sticks. But it seems like common sense, maybe, that people who know too much are a group recognized by any society. So should we be taking, is there enough here? And if so, did the district court deal with that social group? Right. Well, so the court specifically addressed the Blogger article, the Times article, and considered the evidence in the record and found that there was no, that Mexican society did not view witnesses of crimes as a distinct group. And that would be consistent with this court's case law as well. It's not necessarily the case that somebody who is out and public about being a witness is always going to be a social group. For example, in Hernandez-Ruiz, there was, of course, there was support that somebody who testifies in open court may be socially distinct in that society, but it was because there was laws protecting witnesses. And so if there's a law protecting a witness, then clearly that society views that group of people as discrete. So it's not just that somebody is open, there has to be laws and policies, as this court has said, for example, in Diaz-Torres versus Barr in 2020. In order to determine social distinction, you look to country reports, you look to expert reports, you look to press accounts of policies of discrimination, policies of, I'm sorry, press accounts of discrimination and laws and policies or historical animosity. But here we have two press accounts that demonstrate some animosity against people who are suspected as having cooperated. I mean, we know from our prior case law that testimony in court is not required. So I guess, again, why aren't these articles enough? It seems like the BIA dismissed the claim that these could be substantially distinct social groups by just saying, well, there was no testimony in court. But that's not, I think that that was wrong. That's not the standard. So go ahead. Well, first and foremost, the board adopted and affirmed the immigration judge's decision, which means the immigration judge's analysis is also before the court. And the immigration judge specifically addressed the evidence, specifically noted that the petitioner in this case did not testify. She's not a blogger. She's not a journalist. She's not part of the witness protection program. And so that evidence simply was not enough to establish social distinction. And second of all, the board was responding to the petitioner's arguments on appeal. What the petitioner was arguing was, well, because I'm a witness under Ninth Circuit law, that's enough. And the board said that's not the case, that it's a case-by-case, evidence-based approach. And this court has affirmed that in many cases, including in Torres Diaz and also Conde Quevedo versus Barr, where this court said that social distinction is real for substantial evidence and that, you know, there are no categorical rulings with respect to social distinction because it has to be based on the evidence in the record. But why should it matter whether she did report or was perceived to report when the perception is the very thing that makes it socially distinct? Right. So the question is not only whether she is viewable, whether, you know, she did enough to, I suppose, expose herself. But the real question is, does Mexican society view those persons as a discrete group or a faction or an other group that needs some kind of special protection? I mean, if you maybe you don't agree, but let's assume that the articles establish that people who have reported cartel crimes to the police and are known by the cartel to have done so are a PSG. Just assume that. If that's the case, why does whether that perception of the petitioner as being part of that group false? Why should that matter for a PSG analysis? So if I understand your question correctly, if the evidence established that witnesses to crimes are. Who have reported. OK. Right. The only difference between witnesses to crimes who have reported them and petitioner is that she didn't. But she's saying she was perceived to. So in the eyes of the cartel and arguably society in general, there's no difference. Well. So I'm trying not to change your hypothetically, but I think I'm used to it. Well, I would not want to. So please correct me if my answer is going off rails here. But again, the question is Mexican society's views, not the persecutors views. So it actually doesn't matter how the persecutor views the individual, except to the extent it reflects society's views. So there's some, I think, I think somewhere in the record and maybe your friend can help me pinpoint it discussion that, you know, it's in a small towns where it goes around people, people talk. So it's more than just the cartel, I think, is the argument here. It's more than just the cartel that perceives her as reporting the crime. It's her community and the community includes the cartel, but the community, why isn't community society? So I think I understand your question now. So it's first and foremost, there are two parts. One is that the immigration judge found that it was Mexican society. That's the relevant society. And that's never been challenged before. So the lens with which the analysis has to be from Mexican society. So does Mexican society view witnesses as a socially distinct group? So that's the first part. If we wouldn't apply the community in Apatzingan, for example, here, because the immigration judge used Mexican society, that's the society that is before this court now. The second part of that is just because somebody can be seen doesn't mean they are viewed as a group. So social distinction means that the group is a faction or some historically oppressed group, for example. Those are the clearest examples of social distinction. It's not that anybody who appears to draw attention to themselves is a socially distinct group. And this is why it's to have country conditions evidence in the record to establish what Mexican society or how Mexican society might view a proposed particular social group. And the petitioner attempted to do that here. They did submit country conditions evidence. The immigration judge considered it and it just wasn't enough. And this court, when reviewing that record, has to find that there are no other reasonable way to look at it in order to reverse. And I guess, Enrique, this kind of is the inverse of this case where the error that we assigned there was that the person did testify and the agency erred in saying that, but they weren't known to testify. And so we've got kind of the reverse here and that they didn't testify, but they are suspected of at least reporting. But, you know, I guess, does that make a difference? Well, in this case, it makes a difference, but not in the petitioner's favor, because it's even less compelling than in Hernandez-Rivas. The petitioner didn't testify. She didn't cooperate. In fact, you know, the gang never really actually made a threat with respect to her being a witness. She came to the attention of the gang because she had witnessed. But after that, it's all about extortion. They only want money. She even testifies, you know, they wouldn't extorted me if I didn't run a business or didn't have ready access to funds. When they initially extorted her, it was about, well, if you want to continue your food stand, you have to pay us. So the gang itself actually never treated her adversely because of this being a witness. And I think that's why the board noted tangentially in its decision, not only the cognizability aspect of it, but also the nexus aspect of it, you know, that merely that a personal dispute is not enough to establish persecution on account of a protected ground. And that's really what we have here. The gang is targeting the petitioner not because of her status as a member of a group, but only because she came to their attention and after witnessing, after having witnessed the unfortunate event of the murder of the neighbor. So again, I think it's important to know what this case is really about. It's about extortion, right? The petitioner came to the attention of the gang and then was extorted. That's not a basis for asylum. Most of these particular social groups that the petitioner alleges, including the political opinion ground, which would make nine separate grounds for relief and protection here, most of those grounds, I would say eight maybe. Well, if you exclude the witnesses, it would be six. The petitioner actually never even said that during the testimony, right? She didn't say during the testimony, well, why were you targeted? She didn't say, well, because I am a, you know, a female small business owner who opposed the gang. She didn't say that. She didn't say, you know, it's because of, you know, my gender or my nationality. She didn't say it was because of her family or her political opinion. These are all arguments by counsel and it's not based on the facts. And so there's certainly no compelling evidence in this case that would establish a nexus or cognizability really to any of the petitioners. The baseline facts of the case wouldn't support any of those claims, Your Honor. And with respect to the petitioner's arguments about... The agency didn't reach nexus on the witness piece, right? Well, the government believes it did. The immigration judge found that six of the nine grounds were denied, not just on cognizability, but also on nexus. Right, but the one we've been spending most of our time talking about, you're not contending that it reached nexus on the perceived witness to criminal activity. The immigration, the board did note in its decision, not only cognizability, but that personal disputes is not persecution on account of a protected ground. So that may constitute nexus, but it's not necessary for this court to dispose of the entire case just on nexus because cognizability resolves the witness grounds and a combination of cognizability and nexus would resolve the other claims as well. So, if Your Honors have no further questions, the government asks that the petition for review be denied. Thank you very much. Your Honors, two quick points on the perception that this circuit has case law that establishes that cognizability or social distinction is the proper term, does not have to occur at the national level. It can be even at the regional level. And in this case, has sufficient evidence to support that the proposed groups are cognizable at the very least at the regional level. And the- Was that part of the group that the, there, the respondent put before the agency, a subnational group? No, I'm just speaking about in general terms how the cognizability factor is analyzed. And I'm just wondering whether we can reach it if what the agency was asked to consider was a national group. It's not worded at a regional level in terms of Michoacan, but it's worded in terms of Mexican, but the circumstances and her environment, specifically the piece of evidence I mentioned in her declaration where she encountered two bodies stabbed with a sign in a public plaza displaying signs that said, this is what happens when you talk too much or something along those lines. It's very illustrative that they were putting out this message to that community, to that region, to that specific community that this is what happens when you witness something and you come forward with it. I thank you for your time and the opportunity, your honors. I respectfully requested that your honors grant the petition and remind the case for further proceedings. Thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, THOMAS, JOHNSTONE